IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAVIER GUZMAN,                          :
                                        :
          Plaintiff,                    :
                                        :      CIVIL ACTION
          v.                            :
                                        :      NO. 1:13-CV-2925-TWT-ECS
COMPREHENSIVE TECHNICAL GROUP,          :
LLC; JAMES WILE; JOSH SHIBLER;          :
PAUL PACE; and KEVIN PAUTER,            :
                                        :
          Defendants.                   :

## ORDER, REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on motions filed by Plaintiff Javier Guzman ("Plaintiff") and by Defendants in connection with Plaintiff's claims against his former employer, Comprehensive Technical Group, LLC ("CTG"), and four CTG employees, for violations of his civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"); 42 U.S.C. § 1981 ("Section 1981"); 42 U.S.C. § 1988 ("Section 1988"); and the Equal Pay Act of 1963, 29 U.S.C. § 203(d) ("EPA"). See [Doc. 1].

Defendants collectively filed a "Motion to Dismiss Counts II, III, IV, and V and Parts of Count I of Plaintiff's Complaint," [Doc. 7], and a "Motion to Dismiss with Prejudice for Failure to Prosecute or, in the Alternative, Request for Leave to Depose Plaintiff Outside the Discovery Period and Extend Summary Judgment Deadline," [Doc. 20]. Plaintiff filed a motion for an extension of the

discovery period, [Doc. 23].

## I.
## <u>Background</u>

**A.   Procedural Background**

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 5, 2012, against CTG, alleging (1) that he was subjected to discrimination on the basis of national origin and a hostile working environment, and (2) that he was discharged after complaining to management about his treatment. [Doc. 7-2 at 2]. He received a determination on the merits of his EEOC charge on January 11, 2013, finding that it was "reasonable to conclude that the Charging Party was subjected to a hostile working environment because of his national origin and ultimately discharged for complaining of discrimination all in violation of Title VII." [Doc. 1-1 at 2]. Plaintiff received a Notice of Right to Sue letter on June 3, 2013. [Doc. 1-2 at 2]. On August 30, 2013, Plaintiff, represented by counsel, filed a complaint in this Court alleging national origin discrimination, hostile work environment and retaliation in violation of Title VII; national origin discrimination in violation of Section 1981; and violation of the Equal Pay Act ("EPA"). He also seeks attorney's fees under 42 U.S.C. § 1988. <u>See generally</u> [Doc. 1].

On October 14, 2013, Defendants moved to dismiss Plaintiff's

2

complaint, in part, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failing to state a claim upon which relief can be granted. [Doc. 7]. Plaintiff failed to file a response in opposition to the motion to dismiss, and this motion is therefore deemed unopposed. LR 7.1B, NDGa.

On March 12, 2014, Defendants filed a second motion to dismiss this action, this time under Federal Rules 16 and 41, for failure to prosecute and for failure to take part in a discovery conference. [Doc. 20]. Alternatively, Defendants requested leave to depose Plaintiff outside of the discovery period and to extend the deadline for filing summary judgment motions. [Id.]. Plaintiff opposed the second motion to dismiss, [Doc. 29], and filed a motion to extend the time to complete discovery for ninety (90) days. [Doc. 23]. Defendants opposed Plaintiff's motion to extend the discovery period. [Doc. 27]. The motions are now ready to be decided.

**B.   Factual Background**

For purposes of a motion to dismiss, the factual allegations in the complaint are accepted as true. The following facts are derived from the complaint and from certain other documents appearing in the record:[1]

---

[1]   When deciding a motion to dismiss, the court may consider matters of public record, orders, and items appearing in the record, Wright & Miller, Federal Practice and Procedure § 1357, as well as documents that are central to the plaintiff's claim and undisputed

Plaintiff is a male United States citizen of Puerto Rican national origin. [Doc. 1 ¶ 31-32]. In January 2011, Plaintiff began working for Defendant CTG as an "Installer." [Id. ¶ 16]. This position required him to install audio and video broadcast and recording equipment for CTG clients. [Id.]. Initially, Plaintiff earned $16.00 per hour, and at some point during his tenure, his hourly pay rate was raised to $18.00 per hour. [Id. ¶ 20-21]. Plaintiff worked for CTG as an Installer until his discharge in May, 2012, for allegedly threatening to physically harm Defendant Paul Pace. [Id. ¶¶ 17, 51].

During his employment at CTG, Plaintiff experienced harassment and ridicule from other CTG employees. [Id. ¶ 31]. Various colleagues called him "an 'illegal,'" or asked to see his green card. [Id. ¶ 35-36]. Plaintiff's colleagues also called him a "Puerto negro." [Id. ¶ 37]. At an unspecified time during Plaintiff's employment, CTG's Product Manager John Curtis, who was in charge of a project with Spanish-language client Telemundo, discussed assigning Plaintiff to the project to translate for CTG employees. [Id. ¶¶ 38-39]. Plaintiff also alleges that Defendants

---

in terms of authenticity. <u>Horsley v. Feldt</u>, 304 F.3d 1125, 1134 (11th Cir. 2002); <u>Brooks v. Blue Cross and Blue Shield of Florida, Inc.</u>, 115 F.3d 1364, 1369 (11th Cir. 1997); <u>Kabir v. Statebridge Company, LLC, et. al</u>, No. 1:11-cv-2747-WSD, 2011 WL 4500050 at *1 n.1 (N.D. Ga. Sept. 27, 2011).

AO 72A
(Rev.8/82)

Kevin Pauter and Paul Pace once "joked" in the presence of Plaintiff and other CTG employees that they wanted to "set [Plaintiff's] hair on fire and see how quickly it burns." [Id. ¶ 40]. On another occasion, Defendant Pauter threatened to physically attack Plaintiff. [Id. ¶ 41]. Defendant Pace also became "physically aggressive toward [Plaintiff] and verbally accosted" him in the presence of co-workers. [Id. ¶¶ 42-43]. After Defendant Pace "verbal[ly] attack[ed] and threatened violence" against Plaintiff, Defendant Pace was transferred to a CTG Warehouse position, where he received a raise in his pay rate. [Id. ¶ 44].

Plaintiff complained, "at least once," about the harassment and ridicule he received from his co-workers to Defendant James Wile, the Chief Executive Officer of CTG. [Id. ¶¶ 6, 45]. Plaintiff also complained, at least four times, about the harassment and ridicule he received from his co-workers to Defendant Josh Shibler, the head of the Installation department who managed all Installers, Lead Installers, and Product Managers for CTG's Atlanta office. [Id. ¶¶ 28-29, 46-47]. No "prompt remedial action" was taken by any Defendant to end Plaintiff's harassment or to prevent it from occurring in the future. [Id. ¶ 48]. No CTG employees were reprimanded, suspended, or terminated for harassing Plaintiff. [Id. ¶ 49].

Also during his employment at CTG, Plaintiff was asked to serve

5

as the "Lead Installer" on several projects, which required him to take on more responsibility than that of an Installer. [Id. ¶¶ 53, 54]. Lead Installers oversee other Installers and provided guidance and direction to the Installers, and CTG paid Lead Installers at a higher rate than it paid Installers. [Id. ¶¶ 23-24]. Although Plaintiff served as Lead Installer "many times," he never received a raise in his pay rate or a promotion to Lead Installer. [Id. ¶¶ 55-56]. At some unspecified point during Plaintiff's employment, CTG hired a female Lead Installer, Ms. Florence, who was paid at a higher rate than Plaintiff. [Id. ¶¶ 58-59].

On or around May 22, 2012, Plaintiff was terminated for "allegedly threatening Defendant Paul Pace with physical harm when in fact it was Defendant Paul Pace who had repeatedly threatened Mr. Guzman." [Id. ¶ 51].

As noted above, on August 30, 2013, Plaintiff filed his complaint in this Court, [Doc. 1], and, on October 14, 2013, Defendants answered the complaint and moved to dismiss part of Count I and all of Counts II through V. [Docs. 6, 7]. The four-month discovery period was set to end on March 13, 2014. See LR 26.2(a), NDGa. On December 18, 2013, Defendants served Plaintiff with their First Requests for Production of Documents ("RFP"), First Interrogatories, and First Request for Admissions ("RFA"). [Docs. 11, 12, 13].

On January 16, 2014, the parties agreed to extend the time for Plaintiff to respond to Defendants' discovery requests until January 31. [Doc. 20-3 at 2]. On January 31, 2014, Plaintiff's counsel filed a certificate of discovery certifying that she had mailed Plaintiff's responses to Defendants' written discovery on that day. [Doc. 14]; <u>see also</u> Mitchell Aff. ¶ 4 [Doc. 29-1 at 2, 5]. Plaintiff's counsel also emailed a copy of his discovery responses to Defendants' counsel on February 6, 2014, after Defendants notified Plaintiff's counsel that they had not received his discovery responses by mail. [Doc. 20-5]. On March 13, 2014, the last day of the discovery period and one day after Defendants filed their second motion to dismiss, Plaintiff filed his initial disclosures, [Doc. 21], a motion for extension of time to complete discovery, [Doc. 23], a certificate of interested persons, [Doc. 24], a "Joint Detailed Discovery Plan," [Doc. 22], and an "Amended Joint Detailed Discovery Plan," [Doc. 25].

## II.
## <u>Defendant's Motion to Dismiss for Failure to State a Claim, [Doc. 7]</u>

Plaintiff's complaint contains five counts: (1) "Discrimination under Title VII of the Civil Rights Act of 1964" (Count I); (2) "Discrimination under Title I of the Civil Rights Act of 1991" (Count II); (3) "42 U.S.C. § 1981 Violation" (Count III); (4) "Unequal Pay under the Equal Pay Act of 1963" (Count IV); and (5)

7

"Failure to Promote under Title VII of the Civil Rights Act of 1964" (Count V). <u>See</u> <u>generally</u> [Doc. 1]. Defendants contend that each of these counts should be dismissed for failing to state a claim under Rule 12(b)(6). [Doc. 7]. As noted above, the motion is unopposed.

**A.   Standard of Review for Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007). When considering such a motion, a court must accept the allegations in the plaintiff's complaint as true and construe them in the light most favorable to the plaintiff. <u>M.T.V. v. DeKalb Cnty. Sch. Dist.</u>, 446 F.3d 1153, 1156 (11th Cir. 2006) (citation omitted); <u>Fuller v. Johannessen</u>, 76 F.3d 347, 349-350 (11th Cir. 1996). Although the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u> (citations omitted).

Since <u>Twombly</u>, the Supreme Court has clarified that Rule 8 of

the Federal Rules of Civil Procedure requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." _Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009). Therefore, a plaintiff must plead "factual content that [would] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." _Id._

**B.   Count I — National Origin Discrimination under Title VII**

Defendants contend that Plaintiff's Title VII claim must be dismissed to the extent that it is asserted against Defendants Wile, Shibler, Pace, and Pauter (collectively, the "Individual Defendants") because individual liability is not available under Title VII. [Doc. 7-1 at 11].

Suits against individuals under Title VII are not proper because the "relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." _See Busby v. City of Orlando_, 931 F.2d 764, 772 (11th Cir. 1991); _see also Albra v. Advan, Inc._, 490 F.3d 826, 832 (11th Cir. 2007) (citing _Busby_, 931 F.2d at 772); _Cross v. State of Ala._, 49 F.3d 1490, 1504 (11th Cir. 1995).

Accordingly, Defendants' motion to dismiss Plaintiff's Title VII claims against the Individual Defendants should be **GRANTED** and the claims against them **DISMISSED**.

9

**C.    Count II — "Discrimination under Title I of the Civil Rights Act of 1991"**

Count II of the complaint is entitled as set forth above. Nowhere in Count II does Plaintiff cite to the United States Code Section under which he is proceeding. Section 1981 of Title 42 of the United States Code was amended in Title I of the Civil Rights Act of 1991, § 101, to add subsections (b) and (c), and provides a right of action for race discrimination in the making and enforcement of contracts. Gratz v. Bollinger, 539 U.S. 244, 276 n.23, 123 S. Ct. 2411, 2430 n.23 (2003). The Court will presume, therefore, that Plaintiff's claims in Count II are brought under Section 1981.

Defendants argue that Plaintiff's Section 1981 claim should be dismissed because Section 1981 does not provide a remedy for national origin discrimination or harassment. [Doc. 7-1 at 4]. Defendants assert that Section 1981 protects against discrimination on the basis of "race, color, or previous condition of servitude," and that Count II does not allege discrimination based on any of these protected characteristics. [Id.].

Section 1981 provides, in relevant part, as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a). Despite the fact that the statute does not

10

employ the word "race," the Supreme Court has construed Section 1981 "to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race." McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 295, 96 S. Ct. 2574, 2586 (1976). This proscription applies to the making of private employment contracts. See Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 609, 107 S. Ct. 2022, 2026 (1987); Johnson v. Ry. Express Agency, 421 U.S. 454, 459-60, 95 S. Ct. 1716, 1720 (1975).

In Saint Francis Coll., the Supreme Court held that "race" for Section 1981 claims should be interpreted as the concept was understood in the 19th century, when the statute was enacted. 481 U.S. at 609-13, 107 S. Ct. at 2026-28. The Court noted that 19th century dictionaries and encyclopedias "described race in terms of ethnic groups," id. at 611, 107 S. Ct. at 2027, defining the term to include "[t]he descendants of a common ancestor; a family, tribe, people or nation, believed or presumed to belong to the same stock." Id. (quoting N. Webster, Dictionary of the English Language 589 (W. Wheeler ed. 1887)). The Court also took notice of the legislative history of Section 1981, in which Senators and Congressmen identified groups such as Scandinavians, Chinese, Spanish, Anglo-Saxons, Mexicans, Mongolians, Jews, and Germans as distinct races. Id. at 612, 107 S. Ct. at 2027. Accordingly, the Court concluded that Section 1981 protected people from discrimination on

11

the basis of their "ancestry or ethnic characteristics . . . . whether or not it would be classified as racial in terms of modern scientific theory." Id. at 613, 107 S. Ct. at 2028.

The Eleventh Circuit and others have followed this interpretation of race for Section 1981 claims, holding that the statute prohibits discrimination against a racial or ethnic group, even when the identification of that group may be synonymous with a nationality. See DaCosta v. Birmingham Water Works & Sewer Bd., 256 F. App'x 283, 285 n.1 (11th Cir. 2007) (per curiam) (recognizing Indian ancestry as a race for purposes of plaintiff's Section 1981 claim); Donaire v. NME Hosp., Inc., 27 F.3d 507, 509 (11th Cir. 1994) (per curiam) ("We reject the conclusion that Filipinos cannot be a protected class under § 1981."); Bullard v. OMI Ga., Inc., 640 F.2d 632, 634-35 (5th Cir. 1981) (reversing summary judgment in favor of defendants when American plaintiffs had been terminated and replaced by Koreans, stating that granting summary judgment is "especially questionable . . . when a court must decide whether defendants have discriminated on the basis of race or national origin"); Alvarado v. El Paso Indep. Sch. Dist., 445 F.2d 1011, 1011 (5th Cir. 1971) (holding that complaint by Mexican-Americans alleging race and ethnic discrimination "clearly states a cause of action" under Section 1981); accord Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1188 (2d Cir. 1987) (holding that § 1981 prohibits

AO 72A
(Rev.8/82)

discrimination against persons of Puerto Rican descent); Turjillo v. Bd. of Educ. Of Albuquerque Pub. Sch., No. CIV 02-1509 JB/RLP, 2006 WL 4079033, at *5-6 (N.D.N.M. June 9, 2006) (denying motion to dismiss § 1981 claim asserted by Puerto Rican plaintiff who alleged race discrimination based on Hispanic ethnicity and Puerto Rican ancestry).

The above discussion makes clear that Section 1981 may provide a plaintiff with a claim for *race* discrimination based on his Puerto Rican ethnicity. Here, however, Plaintiff has never alleged race as a basis for discrimination against him in either his EEOC charge or anywhere in the complaint. See generally [Docs. 1, 7-2 at 2]. Nor has Plaintiff framed his contentions as race discrimination — he consistently refers to the hostile work environment he endured because of his national origin. See, e.g., [Doc. 1 ¶¶ 31, 37, 71]. In Count II of his complaint, Plaintiff states that "Defendants deliberately harassed and discriminated against [him] on the basis of his national origin." [Doc. 1 ¶ 81]. Furthermore, Plaintiff failed to oppose the motion to dismiss by filing a response, thus implicitly conceding that his only complaint relates to national origin discrimination, not race, however broadly it might be defined under Section 1981. Nor did he move to amend his complaint in any respect after being served with the motion to dismiss. Therefore, the undersigned concludes that Plaintiff's claim is "premised

13

entirely on discrimination based on [his] national origin, not [his] race." Tippie v. Spacelabs Medical, Inc., 180 F. App'x 51, 56 (11th Cir. 2006) (unpublished) (affirming dismissal of Section 1981 claim where the only discrimination was based on the fact plaintiff was not a native of Latin America), cert. denied, 127 S. Ct. 931 (2007); Pouyeh v. Univ. of Ala./Dep't of Ophthalmology, No. CV-12-BE-4198-S, 2014 WL 2740314, at *4 (N.D. Ala. June 16, 2014) (granting motion to dismiss Section 1981 claim where plaintiff's allegations were based only on national origin and not based on plaintiff's race); Joseph v. Fla. Quality Truss Indus., No. 05-61045-CIV, 2006 WL 3519095, at *2-4 (S.D. Fla. 2006) (holding a Haitian plaintiff's claim under Section 1981 not actionable because the plaintiff only alleged national origin discrimination in his complaint without reference to race). Thus, Plaintiff does not state a claim for race discrimination under Section 1981, and Defendants' unopposed motion to dismiss Count II should be **GRANTED**.

**D.   Count III — "42 U.S.C. § 1988 Violation"**

Count III of the complaint states, "[b]ecause Defendants have violated Mr. Guzman's rights protected by 42 U.S.C. §§ 1981, Mr. Guzman is entitled to attorney's fees and expenses as provided by 42 U.S.C. § 1988." [Doc. 1 ¶ 88]. Defendants contend that Plaintiff's claim in Count III for attorney's fees under 42 U.S.C. § 1988 should be dismissed because the underlying Section 1981 claim

14

fails. [Doc. 7-1 at 7].

According to Section 1988:

In any action or proceeding to enforce a provision of section[] 1981 ... of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs....

42 U.S.C. § 1988(b). As discussed above, the undersigned recommends that Plaintiff's Section 1981 claim in Count II be dismissed entirely. See supra Part II.C. Therefore, if the Section 1981 claim is dismissed, Plaintiff will not be entitled to an award of attorney's fees under Section 1988 derived from a § 1981 claim.[2] Accordingly, Defendants' unopposed motion to dismiss Count III should be **GRANTED**. See, e.g., Rogers v. Elliott, 135 F. Supp. 2d 1312, 1315 (N.D. Ga. 2001) (granting summary judgment as to plaintiff's Section 1988 claim after granting summary judgment as to plaintiff's Section 1981 claim).

**E.    Count IV — "Unequal Pay under the Equal Pay Act of 1963"**

Defendants also contend that Plaintiff's claim under the EPA

---

[2]    The Court notes that § 1988 also provides that a prevailing party may be allowed an award of attorney's fees in an action to enforce section 1981a of Title 42. See 42 U.S.C. § 1988(b). Among other things, Section 1981a makes compensatory and punitive damages available in an action brought by a plaintiff for intentional discrimination in violation of Title VII. See 42 U.S.C. § 1981a. Count III does not, however, allege any right to recover attorney's fees in connection with Defendants' alleged violations of Title VII.

AO 72A
(Rev.8/82)

must be dismissed because Plaintiff's complaint does not specifically allege that he was in a comparable position to Ms. Florence, a female CTG employee hired as a Lead Installer at a higher pay rate that Plaintiff. [Doc. 7-1 at 8]. Defendants argue more precisely that Plaintiff's alleged role as a "fill-in" or substitute Lead Installer on certain jobs does not satisfy the pleading requirement that the positions be "equal" or "identical" under the EPA. [Id. at 7-8].

"To establish a prima facie case under the Equal Pay Act, an employee must show that 'an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Arrington v. Cobb Cnty., 139 F.3d 865, 876 (11th Cir. 1998) (quoting Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974)); 29 U.S.C. § 206(d)(1)). "The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high.... '[T]he jobs involved must be virtually identical, that is they would be very much alike or closely related to each other.'" Waters v. Turner, Wood, & Smith Ins. Agency, Inc., 874 F.2d 797, 799 (11th Cir. 1989) (per curiam)(quoting Brennan v. City Stores, Inc., 479 F.2d 235, 238 (5th Cir. 1973)).

In this case, Plaintiff alleges that he was hired as an

16

Installer. [Doc. 1 ¶ 16]. Plaintiff alleges that his job duties as an Installer required him "to install audio and video broadcast and recording equipment for clients of Defendant CTG." [Id. ¶ 16]. Plaintiff alleges that Lead Installers were the most skilled and experienced Installers who oversaw the work of the other Installers on projects, and they provided guidance and direction to the Installers. [Id. ¶¶ 22-23]. Plaintiff alleges that he was asked to serve as Lead Installer on "several projects," [Doc. 1 ¶ 93], but he was never promoted from Installer to the position of full-time Lead Installer. [Id. ¶ 94-95]. In support of his EPA claim in Count IV, Plaintiff alleges that Defendant hired a female, Linda Florence, as a Lead Installer, but never gave him a pay raise to the same level of pay earned by Lead Installers, yet continued to utilize Plaintiff as a Lead Installer after hiring Ms. Florence. [Id. ¶ 95, 96].

Read in the light most favorable to Plaintiff, the complaint in Count IV asserts that Plaintiff performed the duties of Lead Installer but was paid less than the Lead Installers were paid for performing substantially the same duties. He also alleges that one female was hired as a Lead Installer while he continued to perform as a Lead Installer on certain projects without being promoted or paid as one. He does not allege that male Lead Installers were paid less than any female Lead Installers at CTG performing the same

17

work. He does allege that male and female Lead Installers performed duties substantially equal in skill, effort, and responsibility. [Id. ¶ 98].

Plaintiff's allegations fail to state a claim for violation of the EPA. The EPA, 29 U.S.C. § 206(d), prohibits sex discrimination:

> between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . .

Nowhere in Count IV does Plaintiff expressly allege that Defendant CTG paid female Lead Installers more than male Lead Installers who perform similar work under similar working conditions. Furthermore, Plaintiff also fails to allege facts sufficient to show that he performed comparably with a Lead Installer. At most he alleges that he performed as a Lead Installer from time to time "on several projects." He does not allege that he performed these duties full-time. Taking these allegations as a whole, and considering what is alleged and what is not alleged, I conclude that Count IV does not allege enough "to raise a right to relief [under the EPA] above the speculative level" to a level of plausibility. Twombly, 550 U.S. at 555. In other words, there is not enough factual content to permit a plausible inference that the Defendant could be liable for a violation of the EPA. Iqbal, 556

18

U.S. at 678.

In essence, what Plaintiff is complaining about in this count is the fact that a female, Ms. Florence, was hired as a Lead Installer while he was not promoted to Lead Installer and that she was paid more as a Lead Installer than he was paid as an Installer, even though he performed similar work "on several projects." [Doc. 1 ¶¶ 93, 96]. Plaintiff's complaint in Count IV amounts, if anything, to a non-promotion gender discrimination claim, which might be actionable under Title VII for sex discrimination, but does not plausibly state an Equal Pay Act claim. As the Court observed in Waters, 874 F.2d at 801, "[Plaintiff] simply cannot dress a Title VII claim in Equal Pay Act clothes." Based upon this analysis, Defendant's unopposed motion to dismiss Count IV should be **GRANTED** and Plaintiff's EPA claim **DISMISSED**.

**F.    "Failure to Promote under Title VII of the Civil Rights Act of 1964"**

Finally, Defendants argue that Plaintiff's claim for failure to promote based on sex should be dismissed because he has failed to exhaust his administrative remedies by filing a charge of discrimination with the EEOC raising this claim. [Doc. 7-1 at 9]. Defendants contend that Plaintiff's only EEOC charge alleged that he was subjected to a hostile work environment because of his national origin and discharged in retaliation for complaining of

19

such harassment, and therefore, his unstated claim for failure to promote based on sex is outside the scope of his EEOC charge. [Id.].

Before bringing a private action under Title VII, a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC. Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004); Chanda v. Englehard/ICC, 234 F.3d 1219, 1225 (11th Cir. 2000). The purpose of this requirement is to allow the EEOC "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 929 (11th Cir. 1983). A subsequent judicial action "is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Gregory, 355 F.3d at 1280 (quoting Alexander v. Fulton Cnty., Ga., 207 F.3d 1303, 1332 (11th Cir. 2000)). The plaintiff may only bring additional judicial claims that "'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint," but not claims alleging new acts of discrimination. Gregory, 355 F.3d at 1279-80 (quoting Wu v. Thomas, 863 F.2d 1543, 1547 (11th Cir. 1989)); Stuart v. Jefferson Cnty. Dep't of Human Res., 152 F. App'x 798, 801 (11th Cir. 2005). Such additional judicial allegations must be "like" or "reasonably related" to the facts alleged in the administrative charge. Wu, 863

F.2d at 1547.

Here, Plaintiff's EEOC charge alleged discrimination and exposure to a hostile work environment only on the basis of his national origin. [Doc. 7-2 at 2]. In filling out the charge of discrimination, the only box he checked was the box for national origin discrimination. And, in the space provided for additional facts, there is no discussion of sex discrimination or CTG's failure to promote him to Lead Installer. [Id.]. The Court thus finds that the EEOC's subsequent investigation would not reasonably have encompassed any charges of a failure to promote based on sex discrimination. See, e.g., Francois v. Miami-Dade Cnty., 432 F. App'x 819, 821-22 (11th Cir. 2011) (affirming district court's finding that Plaintiff failed to exhaust administrative remedies pertaining to national origin discrimination claim when Plaintiff only marked "retaliation" and "sex" on EEOC charge because national origin discrimination claims were not like or related to those charged claims). Accordingly, Plaintiff's claim for failure to promote based on sex is due to be **DISMISSED** for failure to exhaust his administrative remedies as required under Title VII and Defendants' unopposed motion to dismiss Count V should be **GRANTED**.

## G.    Conclusion

In conclusion, **IT IS RECOMMENDED** that Defendants' motion to dismiss Plaintiff's Counts II, III, IV, and V entirely, and Count

21

I as asserted against the named Individual Defendants, [Doc. 7], be **GRANTED**. Defendants James Wile, Josh Shibler, Paul Pace, and Kevin Pauter should be terminated from the case.

### III.
### Defendants' Motion to Dismiss for Failure to Prosecute, or Alternatively, Defendants' Request for Leave to Depose Plaintiff Outside the Discovery Period, [Doc. 20]

On March 12, 2014, Defendants filed a second motion to dismiss this action pursuant to Rules 16 and 41 of the Federal Rules of Civil Procedure. See [Doc. 20]. The motion seeks dismissal of the action with prejudice due to Plaintiff's alleged failure to prosecute. [Id. at 5-10]. Alternatively, in the event that the Court denies the motion to dismiss, Defendants seek leave to depose Plaintiff outside of the discovery period, which expired on March 13, 2014, and to extend the deadline for filing dispositive motions until thirty (30) days after receipt of Plaintiff's deposition transcript. [Id. at 10-12]. Plaintiff opposes the motion to dismiss and the request for leave to depose him outside of the discovery period, but he does not oppose an extension of the deadline for filing dispositive motions. See generally [Doc. 29].

Rule 41(b) provides the Court with discretion to dismiss an action "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b). Local Rule 41.3 further provides that "[t]he court may ... dismiss a civil case

22

for want of prosecution if: ... [a] case has been pending in this court for more than six (6) months without any substantial proceedings of record." LR 43.1(A)(3), NDGa.

Additionally, Rule 16(f) allows for sanctions if a party "fails to appear at a scheduling or other pretrial conference; is substantially unprepared to participate--or does not participate in good faith--in the conference; or fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f). This rule authorizes the Court to "issue any just order[]," including the following sanctions available under Rule 37: (1) "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"; (2) "striking pleadings in whole or in part"; (3) "staying further proceedings until the order is obeyed"; (4) "dismissing the action or proceeding in whole or in part"; (5) "rendering a default judgment against the disobedient party"; or (6) "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 16(f)(1), 37(b)(2)(A)(ii)-(vii). Sanctions under Rule 16(f) were "designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation." United States v. Samaniego, 345 F.3d 1280, 1284 (11th Cir. 2003) (quoting Goforth, 766 F.2d at 1535).

"Dismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances." Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir. 1985); see also Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1542 (11th Cir. 1993); Powell v. Siegal, 447 F. App'x 92, 94 (11th Cir. 2011). "[D]ismissal may be appropriate when a plaintiff's recalcitrance is due to wilfulness, bad faith or fault." Phipps v. Blakeney, 8 F.3d 788, 790 (11th Cir. 1993).

A two-part analysis applies for determining when an action should be dismissed as a sanction: "[t]here must be both a clear record of wilful conduct and a finding that lesser sanctions are inadequate." Zocaras v. Castro, 465 F.3d 479, 483 (11th Cir. 2006). Findings satisfying both prongs must be made before dismissal is deemed an appropriate sanction. See Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1339 (11th Cir. 2005); Mingo v. Sugar Cane Growers Coop. of Fla., 864 F.2d 101, 102-03 (11th Cir. 1989) (per curiam).

Defendants argue that the following facts support dismissal: Plaintiff failed to respond to the first motion to dismiss. [Doc. 20 at 6]. Thereafter, Plaintiff sought a two week extension until January 31, 2014, to respond to Defendants' first written discovery and requests for admission but then did not provide their responses

24

until five days after the extension expired.[3] [Id. at 3]. Defendants assert that the responses were deficient. [Id. at 4]. Defendants also claim that Plaintiff has failed to respond to their multiple requests to hold the early planning conference required under Rule 26(f) and L.R. 16.1. [Id. at 10]. In addition, Defendants allege that Plaintiff failed to file his Certificate of Interested Persons, Initial Disclosures, and Joint Preliminary Report and Discovery Plan until March 13, 2014, and then only after Defendants filed their motion to dismiss for failure to prosecute. [Id. at 6-7]. Defendants also point to the fact that Plaintiff has not engaged in any discovery. [Id. at 7].

The above facts, however, are not sufficient to warrant a finding of failure to prosecute under Rule 41 or a violation of Rule 16 that would justify dismissal of the Plaintiff's case. As for the adequacy of Plaintiff's discovery responses, if Defendants wanted to challenge Plaintiff's responses, Defendants should have filed a motion to compel. They did not. Furthermore, neither the failure to engage in discovery by Plaintiff nor the failure to respond to the first motion to dismiss equates with wilful failure to prosecute the

---

[3] Plaintiff certified that the responses were mailed on the last day of the extension, but Defendants aver that they never received them. See [Docs. 29-1; 20 at 3].

AO 72A
(Rev.8/82)

case.[4] Indeed, the email correspondence between counsel regarding the January 31 extension and Plaintiff's serving of discovery responses demonstrates Plaintiff's intention to prosecute the case, despite his other failures, which have now, belatedly, been more or less rectified.

While counsel's failure to file the Certificate of Interested Parties, Initial Disclosures, and Joint Preliminary Report until the close of discovery should not be condoned and was in violation of the civil and local rules, these documents have since been filed. It bears noting that Defendants waited until the end of discovery to bring these failures to the attention of the Court, rather than earlier when the Court might have ordered them to be filed, upon pain of dismissal. On the other hand, the Court will deny *Plaintiff's* motion for an extension of the discovery period (except for allowing *Defendant* to take certain depositions), which the Court considers to be a sufficient lesser sanction for Plaintiff's intransigence about meeting the Court's initial disclosure and other filing deadlines.

None of the conduct complained of here has unduly delayed the proceedings. A motion to dismiss has been pending since last

---

[4]     Parties are not required to engage in discovery, and the failure to respond to a motion has its own consequence under the local rules. See LR 7.1, NDGa ("Failure to respond to a motion shall indicate that there is no opposition to the motion.").

October, and the discovery period just expired in March, when this second motion to dismiss was filed. See [Docs. 6, 7]. Accordingly, Defendant's motion to dismiss under Rules 16 and 41 should be **DENIED**.

Defendants' request to depose Plaintiff out of time is **GRANTED**. Discovery for Defendants is re-opened for a period of **FORTY-FIVE (45) DAYS** for the purpose of permitting Defendants to depose Plaintiff. Defendants may, within this forty-five day time frame, also depose any potential witnesses identified by Plaintiff in his late-filed initial disclosures. Defendants' motion to extend the deadline for filing dispositive motions, [Doc. 20 at 10], is **GRANTED**, and the deadline is **HEREBY EXTENDED** to and until **THIRTY (30) DAYS** after the expiration of this limited extended discovery period.

## IV.
### Plaintiff's Motion for Extension of Time to Complete Discovery, [Doc. 23]

Plaintiff seeks to extend the discovery period for an additional ninety (90) days for all parties. [Doc. 23]. Plaintiff states that the parties have not concluded discovery and are in the process of gathering and exchanging information, warranting the extension. [Id. at 2]. Defendants oppose Plaintiff's motion for an extension of the discovery period so as not to "reward[]" Plaintiff for his "last minute, desperate attempts to avoid the known

27

consequences of his actions/inactions." <u>See</u> [Doc. 27 at 3-5].

Upon consideration, Plaintiff's motion to extend the time within which he may conduct discovery, [Doc. 23], is **DENIED**. Plaintiff is also **ORDERED** to serve Defendants with a computation of damages, as is required under Rule 26(a)(1)(iii), within **TEN (10) DAYS** of entry of this Order, failing which the undersigned may impose sanctions, including prohibiting Plaintiff from introducing evidence of his damages, or dismissal of this action.

### V.
### Conclusion

Based on the foregoing, **IT IS RECOMMENDED** that Defendants' motion to dismiss Counts II, III, IV, and V, [Doc. 7], be **GRANTED**. The motion to dismiss the individual defendants, James Wile, Josh Shibler, Paul Pace, and Kevin Pauter, from Count I, [Doc. 7], should also be **GRANTED.**

Additionally, **IT IS RECOMMENDED** that Defendants' second motion to dismiss, which asserts failure to prosecute under Rules 16 and 41 of the Federal Rules of Civil Procedure and the concomitant local rules, [Doc. 20], be **DENIED**.

Defendants' alternative motion for leave to depose Plaintiff outside the discovery period, [Doc. 20], is **HEREBY GRANTED** and the discovery period for Defendants is re-opened for a period of **FORTY-FIVE (45) DAYS**. Plaintiff is **DIRECTED** to make himself available for

28

deposition within **THIRTY (30) DAYS** of entry of this Order. Defendants will also be permitted to depose any witnesses disclosed for the first time in Plaintiff's initial disclosures within **FORTY-FIVE (45) DAYS** of this order.

Defendants' motion to extend the deadline for filing dispositive motions is **HEREBY GRANTED**. [Doc. 20]. Dispositive motions may be filed within **THIRTY (30) DAYS** of the expiration of the forty-five day period permitted above for Defendants to take depositions.

Finally, Plaintiff's motion to extend the time within which he may conduct discovery, [Doc. 23], is **DENIED**. Plaintiff is also **ORDERED** to serve Defendants with a computation of damages within **TEN (10) DAYS** of entry of this Order.

**SO ORDERED, REPORTED AND RECOMMENDED**, this 15th day of August, 2014.

  s/ *E. Clayton Scofield III*
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)